SACHS CORPORATION OF U.S.A., APPELLANT, v. ROSSMANN ET AL., APPELLEES.

(No. 44985—Decided March 10, 1983.)

Mr. *Joseph J. LoPresti, Jr.,* for appellant.

Ms. *Dorothea J. Kingsbury* and Mr. *Q. Albert Corsi,* for appellees.

PARRINO, P.J. Sachs Corporation of U.S.A., appellant, seeks reversal of a judgment of the court of common pleas affirming a determination of the Board of Review of the Ohio Bureau of Employment Services that John Rossmann, appellee, was entitled to receive unemployment compensation benefits because he quit his employment with just cause.

Appellee was hired by appellant as president of its Motorized Vehicles Division pursuant to a contract of employment which was to run from July 1, 1978 through December 31, 1981. At the time, appellant corporation was a wholly-owned subsidiary of Nuernberger Hercules-Werke ("NHW"), a West German company. On July 1, 1979, ownership of appellant was transferred to Fichtel & Sachs, the parent company of NHW.

A job description for the position of president of the Motorized Vehicles Division, which is incorporated by reference into appellee's contract of employment, sets forth a number of broad and specific duties and responsibilities. The basic function of the president was to oversee sales of motor vehicles, specifically mopeds, in the United States.

However, appellee testified that the responsibilities set forth in the position description were eliminated when it was decided that the company would sell its vehicles through independent distributors and that he thereafter had no significant duties to perform. He further stated that, because of the transfer of appellant to Fichtel & Sachs, his job was "eliminated" or reduced to a "formality," but that he

continued to remain in employment with appellant at his existing salary because he was promised an "independent division presidency."

Appellee saw his hopes for such a position vanish when he discovered that appellant was transferring the exclusive right to make mopeds to another corporation, Bombardier.

Appellee's contention that his job was reduced to a mere formality upon transfer of ownership of appellant is supported by the minutes of the meeting of September 25, 1979, between representatives of NHW and Fichtel & Sachs (see appellant's second assignment of error).

In March and April 1980, appellee's attorney sent letters to management seeking to have appellee's position clarified. By letter dated April 8, 1980, counsel for appellant stated, *inter alia,* that he agreed that appellee's status should be clarified. Appellee testified, however, that no further action was taken to clarify his position.

Having failed to receive a definite offer of a new position, appellee sent a letter on April 30, 1980, notifying appellant of his intent to discontinue working as of May 31, 1980.

No witnesses gave testimony on behalf of appellant at the hearing held before the referee in Santa Ana, California, on February 27, 1981, or at a further hearing held in Cleveland on April 22, 1981.

Appellant assigns four errors on appeal.

"I. The transfer of ownership of Sachs Motor Corporation of U.S.A. (appellant) resulted in an increase in the importance of appellee-claimant's position with the company."

This assignment of error is not well-taken.

Appellant takes issue with the finding of the board that Fichtel & Sachs is a subsidiary of NHW.

Appellant objects to this finding because it purportedly implies that the transfer of ownership resulted in a decrease in appellee's relative status when it actually resulted in an increase.

The board did not explicitly draw the inference suggested by appellant, nor does the record reflect that it impliedly did so. Furthermore, it is not apparent to us that appellee's relative status must necessarily have risen solely because his employer was transferred to a parent corporation rather than to a subsidiary. In the absence of supporting evidence, so tenuous an inference would have little or no weight when set against the evidence adduced as to appellee's diminution in status.

Appellant also contests the board's finding that at the time of the transfer of appellant to Fichtel & Sachs "the distribution of Sachs Mopeds in the United States was transferred from Sachs Motor Corporation of U.S.A. to a network of independent contractors." Appellant contends that the distribution system was established in late 1978 and early 1979.

We first note that the two events are reasonably contemporaneous. However, even assuming *arguendo* that the finding is incorrect, appellant does not even suggest how this finding could have influenced the board's decision to appellant's prejudice. Certainly both events, the adoption of the new distribution system and the transfer of ownership of appellant, were cited by appellee in his testimony as factors which took away his employment responsibilities. The fact that the transfer did not itself cause the distribution change is therefore of no substantial relevance.

"II. The appellee Rossmann's position with the company was not reduced to that of a formality or figurehead."

This assignment of error is without merit.

Appellant suggests that the minutes of the meeting of September 25, 1979, between representatives of NHW and Fichtel & Sachs, which dealt with the transfer of appellant from the former to

the latter, does not support the board's finding that appellee's position was "reduced to a figurehead position" or was a "formality with no authorization to sign for the company."

The minutes of the meeting, however, specifically state that, as to appellee's appointment as president, it is "only as a formality, but with no authorization to sign for the company." Furthermore, appellee's testimony supports this finding.

Appellant cites the following telegram sent to appellee in April 1979, in support of its contention that appellee's position was not reduced to a mere formality:

"IT'S TIME AGAIN TO PERSONALLY DISCUSS SOME IMPORTANT ISSUES. FOR THIS REASON WE WOULD LIKE YOU TO COME TO NUERNBERG AND HAVE MEETING ON APRIL 28 AND 29. WE BOOK YOU IN A HOTEL FROM APRIL 27-30.

"PLS BE PREPARED TO DISCUSS FOLLOWING ISSUES:

"1. NEW PRICES AND TERMS FOR 1980/81 SEASON

"2. MOPED MODEL 1980-82. PLS BRINGE [sic] THE SURVEY ALONG.

"3. BOMBARDIER AGREEMENT

"4. CASH FLOW FOR PARTS AND FINANCIAL STATUS

"5. BUDGET SITUATION AND EXISTING COMMITMENT INCLUDING ADVERTISING MONEY. PLS BRING ALONG THE MONTHLY FINANCIAL STATEMENTS FOR FEBRUARY AND MARCH AND PROJETIONS [sic] FOR FOLLOWING MONTHS AND YEAR END."

We agree that this is some evidence tending to show that the appellant continued to have job responsibilities. However, it is not conclusive as to the issues raised before the board. It is quite possible that appellant, aware that appellee was dissatisfied with his employment situation, wished to initiate a dialogue with him in order to obtain valuable marketing information before appellee discontinued his services with the appellant.

This piece of evidence must be, and we may presume was, considered by the board along with other evidence set forth in the record. We cannot say that the finding that appellee's position was reduced to a mere formality is against the manifest weight of that evidence.

"III. Appellee did not attempt to clarify its [sic] position with the company. He attempted to renegotiate his contract."

This assignment of error is devoid of merit.

We believe that the evidence of record, in the form of appellee's testimony and correspondence between the parties, amply supports the board's finding that appellee attempted to clarify his position with appellant rather than renegotiate an existing contract.

"IV. The manifest weight of the evidence supports the appellant's position that appellee Rossmann quit without just cause."

This assignment of error is not well-taken.

R.C. 4141.29 provides in pertinent part as follows:

"(D) Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits under the following conditions:

"* * *

"(2) For the duration of his unemployment if the administrator finds that:

"(a) He quit his work without just cause or has been discharged for just cause in connection with his work * * *."

Just cause "is that which, to an ordinary intelligent person, is a justifiable reason for doing or not doing a particular act." *Peyton* v. *Sun T.V.* (1975), 44 Ohio App. 2d 10, 12 [73 O.O.2d 8]; *Prince* v. *Washington Distributors, Inc.* (C.P. 1977), 8 CCH Ohio Unemp. Ins. Rep. 38, 191, Paragraph 1975.30.

This is the standard to which the board of review must adhere when deter-

mining whether an employee should be denied unemployment compensation benefits. See *Taylor* v. *Bd. of Review* (April 17, 1980), Cuyahoga App. No. 40977, unreported.

The evidence fully supported a finding that appellee quit when the duties which he had contracted to perform were substantially taken away from him and the appellant refused to clarify appellee's position within a reasonable time thereafter.

Under these circumstances, we cannot say that the determination of the board that appellee had just cause for quitting was against the manifest weight of the evidence. See R.C. 4141.28(O); *Brown-Brockmeyer Co.* v. *Roach* (1947), 148 Ohio St. 511 [36 O.O. 167]; *Kilgore* v. *Bd. of Review* (1965), 2 Ohio App. 2d 69 [31 O.O.2d 108]; *Fahl* v. *Bd. of Review* (1965), 2 Ohio App. 2d 286 [31 O.O.2d 426].

We accordingly hold that where a corporate executive has been employed under a contract setting forth specific contractual duties involving significant supervisory responsibilities intended to utilize his creative talents, where those responsibilities are then taken away from him to the extent that his status is reduced to that of a mere figurehead and he continues to hold his corporate title as a formality only, and where his employer continues to refuse to give him alternative responsibilities requiring a similar degree of skill and expertise to that for which he was initially hired, such an employee, upon terminating employment, shall be deemed to have quit with just cause within the meaning of R.C. 4141.29 (D)(2)(a).

The judgment of the trial court is affirmed.

*Judgment affirmed.*

NAHRA and PRYATEL, JJ., concur.