**EIFEL, Appellee,**

v.

**OHIO DEPARTMENT OF JOB AND FAMILY SERVICES, Appellant.**

[Cite as *Eifel v. Ohio Dept. of Job & Family Serv.,*
148 Ohio App.3d 167, 2002-Ohio-2672.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 80320.

Decided July 1, 2002.

Gail White, Legal Aid Society, for appellee.

Betty D. Montgomery, Attorney General, and Laurel Blum Mazorow, Assistant Attorney General, for appellant.

COLLEEN CONWAY COONEY, Judge.

{¶ 1}  This appeal is before the court on the accelerated docket pursuant to App.R. 11.1 and Loc.App.R. 11.1.

{¶ 2}  Defendant-appellant Director, Ohio Department of Job and Family Services ("Director"), appeals from the trial court's decision reversing and vacating the denial of plaintiff-appellee Lynette M. Eifel's claim for unemployment benefits.  For the reasons below, we reverse the judgment of the trial court and reinstate the decision of the Review Commission.

{¶ 3}  Eifel was employed by Medical Mutual of Ohio ("MMO") from February 28, 1994 through June 28, 2000.  In March 2000, Eifel had surgery and took medical leave.  Thereafter, without returning to work after her medical leave, Eifel sought leave under the Family Medical Leave Act ("FMLA") to care for a family member.  On June 28, 2000, prior to the expiration of her FMLA leave, Eifel resigned from MMO.

{¶ 4}  On June 29, 2000, Eifel applied for unemployment compensation from the Ohio Bureau of Employment Services ("OBES").  Her application was denied on July 24, 2000, because OBES found that she quit her employment without just cause.  She appealed this decision, and on August 15, 2000, the OBES Adminis-

trator issued a redetermination that affirmed the July 24, 2000 denial of her request for benefits.

{¶ 5}  The matter was transferred to the Unemployment Compensation Review Commission ("Review Commission") where a hearing was conducted.  On September 22, 2000, the Review Commission hearing officer disallowed Eifel's claim, finding that she quit without just cause and was not able to work due to unwarranted restrictions she had placed on her availability.  On November 8, 2000, Eifel's request for review of the Review Commission's September 22, 2000 decision was disallowed.

{¶ 6}  Pursuant to R.C. 4141.28(O)(1), Eifel timely appealed the matter to the Cuyahoga County Court of Common Pleas.  The trial court reversed the decision of the Review Commission.

{¶ 7}  The Director raises the following assignment of error on appeal:

I

{¶ 8}  "The common pleas court erred in reversing the Ohio Unemployment Compensation Review Commission's decision that appellee quit work without just cause where the decision was not unlawful, unreasonable or against the manifest weight of the evidence."

{¶ 9}  In *Johnson v. Ohio Bur. of Emp. Serv.* (May 14, 1998), Cuyahoga App. No. 73591, 1998 WL 241917, we set forth the standard applied in reviewing a decision of the Review Commission:

{¶ 10}  "The Ohio Supreme Court in *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.* (1995), 73 Ohio St.3d 694, 653 N.E.2d 1207, found that pursuant to R.C. 4141.28(O), an appellate court may reverse the Review Commission' s decision only if it is unlawful, unreasonable or against the manifest weight of the evidence.  In *Tzangas,* the Supreme Court found that this same standard of review applies at each judicial appellate level including the Common Pleas Court, the Court of Appeals and the Ohio Supreme Court.  Id. at 697 [653 N.E.2d 1207].

{¶ 11}  "Following this standard, a reviewing court is not permitted to make factual findings or decide the credibility of witnesses, as determinations of purely factual questions are primarily reserved for the Review Commission.  *Irvine v. Unemployment Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 18 [19 OBR 12], 482 N.E.2d 587; *Brown–Brockmeyer Co. v. Roach* (1947), 148 Ohio St. 511 [36 O.O. 167], 76 N.E.2d 79.

{¶ 12}  "Accordingly * * * we limit our review to a determination of the lawfulness and reasonableness of the Review Commission' s decision, in light of

the evidence presented to it. We will not reverse that decision if it is supported by competent, credible evidence."

{¶ 13} The Review Commission's September 22, 2000 decision disallowing Eifel's claim for benefits reads in pertinent part:

{¶ 14} "Issue 1: [*Just Cause*]

{¶ 15} "Claimant quit employment with Medical Mutual of Ohio Inc. because she did not feel that the employer could provide her with a work environment that would not injure her health.

{¶ 16} "* * *

{¶ 17} "[C]laimant made requests of the employer to accommodate her need for a clean, pollution-free environment and * * * the employer took steps to accommodate claimant.

{¶ 18} "* * *

{¶ 19} "[C]laimant has not established the medical necessity of quitting her employment and thus she quit without just cause within the meaning of the Ohio Unemployment Compensation Law."

{¶ 20} The trial court reversed the Review Commission's decision finding that an incorrect statement of law was applied to the issue of just cause.

{¶ 21} R.C. 4141.29(D)(2)(a) provides that "no individual may * * * be paid benefits * * * [f]or the duration of the individual's unemployment if the director finds that [t]he individual quit work without just cause * * *."

{¶ 22} In overruling the Review Commission decision, the trial court, relying on *Barnett v. Ohio Bur. of Emp. Serv.* (June 12, 1986), Cuyahoga App. No. 50751, 1986 WL 6723, determined:

{¶ 23} "The proper issue is whether claimant reasonably believed that her asthma was caused by environmental pollutants at work and that there was no way for her safely to continue working in the MMO building."

{¶ 24} The claimant in *Barnett* worked at an industrial casings plant and suffered from severe hearing loss. After a hearing, the Review Commission denied the claimant's benefits despite finding that "[l]oud noise throughout the plant * * * was unavoidable." The Review Commission made its decision based on the fact that medical experts disagreed on whether the noise at the plant caused the hearing loss or whether it was a hereditary problem.

{¶ 25} In reversing the Review Commission's decision, this court stated:

{¶ 26} "Whether or not plant conditions actually caused appellant's hearing loss was not at issue; rather the issue was the reasonableness of appellant's belief that they were the cause *and that quitting was the only reasonable way to avoid*

*further loss of hearing.* Cf. *Irvine v. Ohio Bd. of Unemploy. Comp.* (1985), 19 Ohio St.3d 15 [19 OBR 12, 482 N.E.2d 587]." (Emphasis added.)

{¶ 27} Although phrased differently, the Review Commission relied on the same proposition of law as did the trial court. The issue in *Barnett* was whether quitting provided the only solution to preserving the claimant's health. In other words, the issue was whether it was medically necessary for the claimant to quit. This is precisely the question considered by the Review Commission in the instant matter.

■ {¶ 28} *Irvine,* upon which the *Barnett* court relied, sets forth the standard of law applicable to the instant case. In its syllabus, the Ohio Supreme Court states:

{¶ 29} "An employee's voluntary resignation on the basis of health problems is without just cause within the meaning of R.C. 4141.29(D)(2)(a) when the employee is physically capable of maintaining a position of employment with the employer, but fails to carry her burden of proving that she inquired of her employer whether employment opportunities were available which conformed to her physical capabilities and same were not offered to her by the employer."

{¶ 30} Applying *Irvine* to the instant matter, we find that the Review Commission did not err in disallowing Eifel's claims for unemployment compensation benefits.

{¶ 31} Here, the Review Commission found that prior to her leave, Eifel made requests to MMO to accommodate her asthma. In response to her request, the Review Commission found that MMO took steps to accommodate her and showed a "willingness to do things to satisfy claimant's need for a 'non-injurious' work environment."

■ {¶ 32} Although contradictory evidence was presented on the issue of whether the requested accommodations were made, it is not our position as a reviewing court to dispute a factual finding of the Review Commission that is supported by competent credible evidence. *Johnson v. Ohio Bur. of Emp.* (May 14, 1998), Cuyahoga App. No. 73591, 1998 WL 241917. A review of the record supports the Review Commission's finding. Pat McBride, the medical disability coordinator for MMO, testified that once advised of Eifel's asthma problems, she provided Eifel with a Material Safety Data Sheet ("MSDS") from the cleaning service used by MMO, and awaited feedback from Eifel or her doctor regarding the necessary accommodations. McBride also testified that in the meantime Eifel's work station was moved, air ventilation was provided, and Eifel was given fans for her desk.

{¶ 33}  Thus, although Eifel met her burden with regard to proving that she advised MMO of her need for accommodation, she failed to establish that no actions were taken by MMO in response to her request.

{¶ 34}  Further, Eifel never provided MMO with her doctor's instructions for accommodation after MMO provided her with the MSDS. The first time that MMO received Eifel's doctor's medical restrictions[1] was two days[2] before Eifel resigned from MMO. Thus, because Eifel quit while she was on FMLA leave, she failed to give MMO sufficient timely notice to afford it the opportunity of finding satisfactory alternate employment for her.  See *Irvine* at 18, 19 OBR 12, 482 N.E.2d 587.

{¶ 35}  Therefore, we find that Eifel quit without just cause.  Because of our determination of this issue, it is unnecessary to determine whether Eifel was available for work pursuant to R.C. 4141.29(A)(4)(a).

{¶ 36}  Accordingly, we reverse the trial court's judgment because we find that the Review Commission's decision was not unlawful, unreasonable, or against the manifest weight of the evidence.

{¶ 37}  Judgment reversed and cause remanded with instructions to reinstate the Review Commission's decision.

Judgment accordingly.

MICHAEL J. CORRIGAN, P.J., and JAMES J. SWEENEY, J., concur.

---

1.  The body of Dr. Neal C. Chadwick's letter, in its entirety, reads: "The above patient has been under my care since 1997 with severe bronchial asthma.  She has had multiple attacks requiring numerous medications and currently takes both Intal and Albuterol on a regular basis.  She is extremely sensitive to environmental conditions such as dust or fumes which may precipitate her bronchial asthma.  The patient should be in a relatively clean environment with no extremes of temperature or environmental pollutant that would help precipitate her asthma."

2.  Although the Review Commission did not make this finding, McBride testifies that this is when she received the letter.  Her testimony is corroborated by the markings on the letter from Eifel's doctor, which indicate that it was dictated on June 14, 2000, and transcribed on June 18, 2000.