JOURNAL ENTRY and OPINION.
I. Introduction
 {¶ 1} Appellant Brian Nieszczur brings this appeal from the Cuyahoga County Court of Common Pleas. The trial court affirmed the decision of the Ohio Job and Family Services' Board of Review, which determined that Nieszczur was not eligible for unemployment benefits because he had quit his job without just cause. Nieszczur brings three assignments of error for our review.
 II. Facts {¶ 2} Nieszczur began working as an assistant manager trainee for Discount Drug Mart ("DDM") on May 1, 2001. He began to experience psychological problems immediately and requested a leave of absence on May 6, 2001. Upon receiving a letter from Nieszczur's doctor, DDM agreed to consider his request. Later, Nieszczur showed DDM a letter from his psychiatrist, which indicated that Nieszczur was diagnosed with massive depressive disorder with anxious features. Despite the fact that Nieszczur was not eligible for any leave, DDM then granted him leave for ninety days. DDM also continued to provide insurance during this time.
 {¶ 3} As the end of the ninety days approached, DDM sent Nieszczur a letter informing him that he was expected to return on August 9, 2001. Nieszczur's psychiatrist sent a letter to DDM, stating that "it would be optimal if he could return on a less than fulltime [sic] basis (30 hours) for the initial few weeks transition" and that "a regular schedule, as opposed to swing shifts, would be helpful as well, if this can be arranged." DDM explained that Nieszczur was hired to work 44 hours a week on a split-shift schedule. Nieszczur determined, with the help of his psychiatrist, that the full-time position would be detrimental to his health and so he decided not to return to work.
 {¶ 4} Nieszczur made a claim for unemployment benefits with the Ohio Department of Job and Family Services for the week ending August 18, 2001. On October 15, 2001, the director made an initial determination that Nieszczur had quit his job without just cause and was therefore ineligible for unemployment benefits. Nieszczur appealed this determination to the Unemployment Compensation Review commission, which held a hearing on November 16, 2001. After the hearing, the hearing officer found that Nieszczur had quit his job without just cause. The review commission disallowed Nieszczur's request for further appeal. Nieszczur appealed the hearing officer's decision to the Cuyahoga County Court of Common Pleas. In a July 17, 2002 judgment entry, the common pleas court affirmed the decision of the review commission. The matter now rests with this court.
 III. Discussion A. {¶ 5} Nieszczur argues that the hearing officer unreasonably determined that Nieszczur quit his job without just cause when Nieszczur quit because of a medical problem but was denied a reasonable accommodation by DDM. Nieszczur argues that the hearing officer improperly focused on what DDM knew about Nieszczur's illness rather than what Nieszczur himself knew. Finally, Nieszczur argues that the review commission wrongfully refused to review the hearing officer's decision.
A. Assignment of Error No. I
 {¶ 6} Assignment of Error No. I: "The Court of Common Pleas erred in affirming the Board of Review's determination that Mr. Nieszczur quit his job without just cause when that determination was unlawful and unreasonable."
 {¶ 7} Under this assignment, Nieszczur argues that the initial determination made by the Ohio Department of Job Family Services held him to a higher burden of proof than Ohio law requires. Specifically, Nieszczur argues the department improperly placed the burden on him to show that he had no alternative to quitting. Rather, Nieszczur continues, his burden was merely to show a justifiable reason for quitting. Nieszczur argues that this original mistake was implicitly affirmed by the department, by the review commission and by the common pleas court.
 {¶ 8} A review of the decision made by the review commission's hearing officer, however, shows that the issue under consideration was whether "claimant quit work with [DDM] without just cause[.]" Therefore, regardless of the standard employed during the initial determination, the hearing officer applied the proper standard. Nieszczur's appeal to the common pleas court is from the decision of the review commission, not from the initial determination. R.C. 4141.28(N)(1) (eff. 9-21-2000). Therefore, at least in terms of the proper legal standard, the court of common pleas did not err in affirming the review commission. This assignment is not well taken.
 {¶ 9} Assignment of Error II
 {¶ 10} Assignment of Error No. II: "The Court of Common Pleas erred in affirming the Board of Review's determination that Mr. Nieszczur quit his job without just cause when that determination was against the manifest weight of the evidence."
 1. {¶ 11} The hearing officer concluded that Nieszczur did in fact quit without just cause because the recommendation made by Nieszczur's doctor regarding work hours was just that — a recommendation. Since Nieszczur's doctor did not require a lighter work schedule, the hearing officer concluded, DDM was under no obligation to make any accommodations.
 2. {¶ 12} "An appellate court may reverse the Unemployment Compensation Board of Review's `just cause' determination only if it is unlawful, unreasonable or against the manifest weight of the evidence."Tzangas, Plakas Mannos v. Admr., Ohio Bur. Of Emp. Serv.,73 Ohio St.3d 694, paragraph one of the syllabus. Further, all reviewing courts have the same obligation: "to determine whether the board's decision is supported by the evidence in the record," without substituting its factual findings or determinations regarding the credibility of witnesses for those of the board. Id. "The board's role as factfinder is intact; a reviewing court may reverse the board's determination only if it is unlawful, unreasonable, or against the manifest weight of the evidence." Id., 73 Ohio St.3d at 697. Therefore, the decision of the hearing officer will be affirmed if it is supported by competent, credible evidence. See Eifel v. Dir., Ohio Dep't. of JobAnd Family Servs. (2002), 148 Ohio App.3d 167, 170, quoting Johnson v.Ohio Bur. Of Emp. Serv. (May 14, 1998), Cuyahoga App. No. 73591.The question here is whether the hearing officer's decision is supported by competent, credible evidence. We hold that it is.
 3. {¶ 13} The hearing officer's findings of fact include the following: "The doctor did not require these conditions. As they were not required conditions, Mr. Eby [DDM's human resources director] declined to allow claimant to return part time." This conclusion is supported by the letter that Eby received from Nieszczur's psychiatrist. In the letter, the psychiatrist wrote that "it would be optimal if he could return on a less than fulltime [sic] basis (30 hours) for the initial few weeks transition" and that "a regular schedule, as opposed to swing shifts, would be helpful as well, if this can be arranged."
 {¶ 14} The psychiatrist nowhere conditions Nieszczur's return on an adjustment of his work schedule. Rather, the psychiatrist offers that it would "optimal" and "helpful" if some accommodation could be made. Therefore, the hearing officer did not err in finding that Nieszczur quit his job without just cause. This assignment is not well taken.
D. Assignment of Error No. III
 {¶ 15} Assignment of Error No. III: "The Court of Common Pleas erred in affirming the Board of Review's determination that Mr. Nieszczur quit his job without just cause when the Hearing Officer failed to consider medical evidence in the record that demonstrated that Mr. Nieszczur did have just cause."
 1. {¶ 16} Here, Nieszczur argues that the psychiatrist's letter recommending shorter hours is not dispositive of whether Nieszczur was unable to return to work and that the hearing officer erred by not considering all of the evidence. Further, Nieszczur argues that "what matters for purposes of determining whether a claimant is entitled to unemployment benefits in these circumstances is whether he was justified in deciding that he could not return to work, not whether the employer has reason to disagree with him[.]" Further, "[e]ven if Mr. Nieszczur had not provided [the human resources director] with the letter from his psychiatrist, he would be entitled to compensation because due to his illness he was unable to work the schedule the employer required."
 2. a. {¶ 17} Evidence that the hearing officer should have considered, according to Nieszczur, is the following. First, Nieszczur points to the very letter that he argues is not dispositive of the issue and that, again, that includes only recommendations, not requirements.
 b. {¶ 18} Nieszczur further points to a letter from his psychiatrist dated August 15, 2001. This letter, however, states explicitly that Nieszczur was not able to work between May 11 and August 8, 2001. Further, although the letter does state that he advised Nieszczur to return to work at 30 hours per week, the letter also explicitly states that Nieszczur is able to work full-time without any restrictions on the type of work Nieszczur could perform. In sum, the letter shows that, as of the end of the 90-day leave (August 9, 2001), Nieszczur was able to return to work on a full-time basis.
 c. {¶ 19} Finally, Nieszczur points to a response to a request for medical information that was prepared by Nieszczur's psychiatrist on October 18, 2001. Again, the psychiatrist stated that Nieszczur was able to work full-time (in this letter the psychiatrist stated that Nieszczur was able to work full-time as of August 13, 2001, which is four days later than the previous assessment). The psychiatrist adds that he restricted the full-time work to "position other than store management." Finally, the psychiatrist wrote that he did advise Nieszczur to quit "after [DDM] refused part-time hire. Advised to return to employment other than retail mgmt." [Sic.]
 {¶ 20} In a letter sent with this statement, the psychiatrist wrote that he "agreed to allow part-time return [sic] to work on Aug 8, 2001, due to a warning that he would be terminated if he failed to return to work." He concludes by saying that he has now (as of October 18) cleared Nieszczur to work full-time.
 d. {¶ 21} To sum up, the three documents show the following. On August 6, Nieszczur's psychiatrist recommends, but does not require, that Nieszczur return to work for thirty hours a week on a regular schedule. On August 15, the psychiatrist stated that, as of August 9, Nieszczur was able to work full-time without any restrictions on the type of work Nieszczur could perform and "advised" that Nieszczur return for thirty hours a week. Finally, On October 18, 2001, the psychiatrist stated that Nieszczur was able to work full-time as of August 13, but that he should return to something other than a management position.
 {¶ 22} Thus, the psychiatrist ultimately states that he restricted Nieszczur's return to thirty hours a week, yet never uses a word stronger than "advises" for that requirement. Further, the psychiatrist first states (in the August 15 letter) that Nieszczur could return without any restrictions on the type of work he could perform, but later (in the October 18 information) that he should return to something other than a management position.
 3. {¶ 23} There is contradictory evidence, the resolution of which is left for the hearing officer, not this court. Therefore, even if we were to accept Nieszczur's argument that the hearing officer ignored these pieces of evidence, we could hardly say that the hearing officer's decision was an abuse of discretion, since those letters do not definitively show what Nieszczur says they show. Again, assuming that the hearing officer ignored the above pieces of evidence, we do not see how consideration of them would have affected the outcome of the decision, given that the evidence contradicted itself and, if anything, bolstered the decision that no work restrictions or accommodations were required by the psychiatrist. In other words, there is nothing in the record that objectively shows that Nieszczur was unable to work full-time as a management trainee. This assignment is not well taken.
 IV. Conclusion {¶ 24} Therefore, we hold that the trial court did not err in affirming the hearing officer's decision, which found that Nieszczur had quit his job without just cause. We hold that the hearing officer's decision was supported by competent, credible evidence and that therefore he did not abuse his discretion in finding that Nieszczur quit his job without just cause. Finally, respecting the fact-finding role of the hearing officer, we hold that the officer's decision was not unlawful, unreasonable, or against the manifest weight of the evidence.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
KENNETH A. ROCCO, A.J., and FRANK D. CELEBREZZE, JR., J., CONCUR.