JOURNAL ENTRY AND OPINION
{¶ 1} Defendants-appellants, Ohio Department of Job and Family Services and Flow Polymers, Inc., appeal the judgment of the Cuyahoga County Common Pleas Court that reversed a decision of the Unemployment Review Commission denying plaintiff-appellee, Pamela S. MacMillan, unemployment benefits. For the reasons that follow, we reverse the judgment of the trial court and reinstate the decision of the Review Commission.
 {¶ 2} A review of the record reveals that Pamela S. MacMillan ("MacMillan") was employed by Flow Polymers, Inc. ("Flow Polymers") as a national accounts manager. After a change in management in March 2000, MacMillan became dissatisfied with her job because of decisions implemented by the new management. The level of dissatisfaction peaked at a meeting held on July 5, 2000, at which time MacMillan tendered her resignation and left the employ of Flow Polymers.
 {¶ 3} MacMillan thereafter filed a claim for unemployment benefits with the Ohio Department of Job and Family Services ("ODJFS") in July 2000. Although ODJFS determined that MacMillan "quit with just cause," her claim was nonetheless initially disallowed because her separation pay from Flow Polymers exceeded the weekly benefit amount.[1] After this initial period of ineligibility expired, MacMillan's claim apparently was allowed and she was to begin receiving unemployment benefits sometime in August 2000.
 {¶ 4} Flow Polymers appealed this decision, however, arguing, inter alia, that MacMillan "willingly quit" her employment. Flow Polymers again appealed and a hearing was held before the Ohio Unemployment Compensation Review Commission ("Review Commission") on September 26, 2000 and October 25, 2000. In determining that MacMillan had quit without just cause, the Review Commission stated, in relevant part:
 {¶ 5} "[MacMillan] quit her employment because of management's stand on price increases and introduction of a lower priced product that [MacMillan] felt was inconsistent with good business practices and she did not want to be a part of a business that operated that way. * * * [W]hatever changes the new managers had made with respect to aspects of [MacMillan's] job, [MacMillan] had accepted those changes by continuing in employment until July 5, 2000. The decisions that [she] disagreed with in the meeting with [Chief Executive Officer] Mr. Searles and [Chief Operating Officer] Mr. Ivany on July 5, 2000, were matters that were within their prerogative to determine. Their decision to disregard [MacMillan's] ideas about how things should be done does not establish the work as unsuitable or present [MacMillan] with a situation where a reasonably prudent person would resign."
 {¶ 6} The Review Commission thereafter found MacMillan had quit her employment with Flow Polymers without just cause and suspended her eligibility for unemployment compensation benefits.
 {¶ 7} MacMillan eventually appealed to the common pleas court, which reversed the decision of the Commission stating:
 {¶ 8} "Upon review of the briefs and transcript, the decision of the Review Commission is reversed as it is unlawful, unreasonable and against the manifest weight of the evidence. The management decision concerning pricing was within their discretion, however, the means of implementing the increase destroyed the credibility of [MacMillan]. Further actions by management also impaired the ability of [MacMillan] to function in the position. Applying the standard, to an ordinary intelligent person, it is a justifiable reason for quitting, where that cause is related in a substantial way with the person's ability to perform in his or her employment capacity, and is essentially `involuntar[il]y' unemployed. * * *"
 {¶ 9} Finding MacMillan's relationship with the company's customers undermined by the actions of Flow Polymers, the trial court, apparently finding just cause for MacMillan to quit her employment, ordered her "to participate in the [unemployment] benefits offered by [Flow Polymers and ODJFS] * * *."
 {¶ 10} Flow Polymers and ODJFS (collectively referred to as "appellants") both appealed and now challenge this decision.[2]
 {¶ 11} R.C. Chapter 4141 sets forth the statutory framework for entitlement to unemployment compensation. R.C. 4141.282(H), in particular, requires a common pleas court to uphold a decision of the Review Commission unless the decision is found to be unlawful, unreasonable, or against the manifest weight of the evidence. In reviewing the Review Commission's decision, this court must apply the same standard of review as the lower court.Tzangas, Plakas Mannos v. Ohio Bur. of Emp. Serv. (1995),73 Ohio St.3d 694, paragraph one of the syllabus. Thus, we may affirm the trial court only if we find as the trial court did that the Review Commission's decision was unlawful, unreasonable or against the manifest weight of the evidence. Id. "While appellate courts are not permitted to make factual findings or to determine the credibility of witnesses, they do have the duty to determine whether the board's decision is supported by the evidence in the record." Id. at 696.
 {¶ 12} R.C. 4141.29(D)(2)(a) provides that an individual is not eligible for unemployment benefits if "the individual quit work without just cause * * *." The Supreme Court of Ohio inIrvine v. Unemployment Comp. Bd. of Rev. (1985),19 Ohio St.3d 15, defined "just cause" as "that which, to an ordinary intelligent person, is a justifiable reason for doing or not doing a particular act." Id. at 17, quoting Peyton v. Sun T.V.
(1975), 44 Ohio App.2d 10, 12. Continuing, the Irvine court stated:
 {¶ 13} "The determination of whether just cause exists necessarily depends upon the unique factual considerations of the particular case. Determination of purely factual questions is primarily within the province of the referee and the board. Upon appeal, a court of law may reverse such decisions only if they are unlawful, unreasonable, or against the manifest weight of the evidence. Like other courts serving in an appellate capacity, we sit on a court with limited power of review. Such courts are not permitted to make factual findings or to determine the credibility of witnesses. The duty or authority of the courts is to determine whether the decision of the board is supported by the evidence in the record. The fact that reasonable minds might reach different conclusions is not a basis for the reversal of the board's decision. Moreover, `our statutes on appeals from such decisions [of the board] are so designed and worded as to leave undisturbed the board's decisions on close questions. Where the board might reasonably decide either way, the courts have no authority to upset the board's decision.'" Id. at 17 (Citations omitted).
 {¶ 14} Consequently, a reviewing court must uphold a decision of the Review Commission if it is supported by competent, credible evidence. See Eifel v. Ohio Dept. of Job FamilyServ., 148 Ohio App.3d 167, 2002-Ohio-2672, at ¶ 12. After reviewing the record in this case, we find that there existed competent, credible evidence for the Review Commission to conclude that MacMillan quit her employment with Flow Polymers without just cause, thereby precluding her entitlement to unemployment compensation.
 {¶ 15} The underlying purpose of unemployment compensation is "to enable unfortunate employees, who become and remaininvoluntarily unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level * * *." (Emphasis in original.) Irvine, 19 Ohio St.3d at 17, quotingLeach v. Republic Steel Corp. (1964), 176 Ohio St. 221, 223. It is intended "to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault of his [or her] own." Id., quoting Salzl v. Gibson Greeting Cards (1980),61 Ohio St.2d 35, 39.
 {¶ 16} This is not the case here. MacMillan was able to work, but was not willing to do so. She was unemployed because she chose to resign her position with Flow Polymers because she was dissatisfied with the methods employed by new management in instituting price changes. Competent, credible evidence contained in the record indicates that it was within the authority of this new management to implement policies and procedures, however professionally distasteful they may have been to MacMillan.
 {¶ 17} MacMillan urges this court to find her case analogous to that of the claimant in Sachs Corp. of U.S.A. v. Rossmann
(1983), 9 Ohio App.3d 188. The claimant in Sachs was a division president of a wholly-owned subsidiary of a West German company and was responsible for overseeing the sale of mopeds in the United States. The claimant's job responsibilities were totally eliminated, however, when the parent company decided to sell its vehicles through independent distributors and the claimant's hopes of reassignment to another division vanished. The Sachs
court concluded that, under these circumstances, the claimant quit his employment with just cause entitling him to receive unemployment compensation benefits. "[W]here those responsibilities are then taken away from [the claimant] to the extent that [the claimant's] status is reduced to that of a mere figurehead * * * such an employee upon terminating employment, shall be deemed to have quit with just cause within the meaning of R.C. 4141.29(D)(2)(a)." Id. at 191. In this case, MacMillan's job responsibilities were not totally eliminated, thereby reducing her to a "mere figurehead." It is true that her responsibilities changed somewhat with the change in management some months before her resignation. This alteration, however, did not result in the elimination of responsibilities leaving her with no duties to perform. On the contrary, MacMillan was merely dissatisfied with the manner in which she had to perform her duties because it did not comport with how she had done her job in the past.
 {¶ 18} Nor do we find MacMillan's reliance on Vickers v.Ohio State Bur. of Emp. Serv. (Apr. 22, 1999), 10th Dist. No. 98AP-656, 1999 Ohio App. Lexis 1794, helpful to her case. The claimant in Vickers was found to have quit with just cause when the record indicated that the employer "forced" the claimant to lie and, rather than do so, the claimant quit. The evidence does not suggest that anyone at Flow Polymers asked, let alone forced, MacMillan to lie. At the time MacMillan informed customers of the price of the product, it was a true statement. That management decided to increase the price of its products thereafter does not equate with being instructed to intentionally misrepresent the cost of the company's products.
 {¶ 19} MacMillan submits that Flow Polymers' actions were "unethical" and injurious to her professional reputation. Regardless of whether Flow Polymers exercised good business judgment in the decisions it made, MacMillan, by her own testimony, was employed in a subordinate role — despite her characterization to the contrary that she was someone management should have consulted before such decisions were made. She was dissatisfied that the company did not do so and resigned. Based on this record, there existed competent, credible evidence from which the Review Commission could determine that MacMillan resigned her position without just cause.
 {¶ 20} The judgment of the trial court is, therefore, reversed and the decision of the Review Commission is hereby reinstated.
Cooney, P.J., concurs.
 Gallagher, J., dissents.
(See dissenting attached).
[1] Because Flow Polymers continued to pay MacMillan her regular salary through July 28, 2000, there could be no finding that she was unemployed for compensation purposes through this time period.
[2] Upon motion of Flow Polymers, we consolidated the appeals for briefing, hearing and disposition and further allowed Flow Polymers to adopt the brief filed by ODJFS.